**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| RUSSELL BERRY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MERCADIEN, P.C., CPAS, and ORRSTOWN BANK,<br><br>Defendants. | Case No. ___________________<br><br>COMPLAINT - CLASS ACTION<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff Russell Berry ("Plaintiff"), individually, and on behalf of all others similarly situated (collectively, "Class members"), by and through his attorneys, brings this Class Action Complaint against Defendants Mercadien, P.C., CPAs ("Mercadien") and Orrstown Bank ("Orrstown" and with Mercadien, "Defendants"), and complains and alleges upon personal knowledge as to himself and information and belief as to all other matters.

## INTRODUCTION

1. Plaintiff brings this class action against Defendants for their failure to secure and safeguard personally identifying information ("PII"), including names, addresses, dates of birth, driver's license/Government ID numbers, Social Security numbers, financial account information, usernames and passwords, IRS pin numbers, and payment card information, compromised in a data breach involving Mercadien's information systems. The data breach impacted approximately 402,741 individuals. Of those individuals, approximately 83,938 were Orrstown customers and clients whose PII Orrstown provided to Mercadien and whose PII was compromised in connection with the breach, including Plaintiff and Class members.

2. Orrstown is a financial institution that offers personal banking, business banking, mortgage lending, wealth management, and related financial services to consumers and businesses. Mercadien is a certified public accounting and financial advisory firm that provides tax, audit, compliance, and advisory services to privately owned businesses, financial institutions, nonprofit organizations, government entities, and individuals and families. Orrstown contracts with Mercadien for certain advisory services.

3. Between September 17, 2025, and October 9, 2025, an unauthorized third-party cybercriminal or criminals gained access to Mercadien's information systems and exfiltrated the PII of 402,741 individuals, including approximately 83,938 Orrstown customers whose PII Orrstown had provided to Mercadien in connection with Mercadien's advisory services to Orrstown (the "Data Breach"). Mercadien discovered the unauthorized access on or about November 7, 2025, having failed to detect an active intrusion that had been ongoing for approximately three weeks.

4. Despite discovering the Data Breach in early November 2025, Mercadien did not notify Orrstown until approximately May 21, 2026. Despite learning of the Data Breach on or about May 21, 2026, Orrstown did not begin notifying affected individuals until June 11, 2026—nearly nine months after the Data Breach concluded and three weeks after Orrstown was notified.

5. Defendants owed a duty to Plaintiff and Class members to implement and maintain reasonable and adequate security measures to secure, protect, and safeguard their PII against unauthorized access and disclosure. Defendants breached that duty by, among other things, failing to, or sharing PII with third parties that failed to, implement and maintain reasonable security procedures and practices to protect Plaintiff's and Class members' PII from unauthorized access and disclosure.

6. As a result of Defendants' inadequate security and breach of their duties and obligations, the Data Breach occurred, and Plaintiff's and Class members' PII was accessed and disclosed. This action seeks to remedy these failings and their consequences. Plaintiff brings this action on behalf of himself and all persons whose PII was exposed as a result of the Data Breach, which occurred between approximately September 17, 2025, and October 9, 2025.

7. Plaintiff, on behalf of himself and all other Class members, asserts claims for negligence, negligence per se, breach of implied contract, unjust enrichment, and violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), and seeks declaratory relief, injunctive relief, monetary damages, statutory damages, punitive damages, equitable relief, and all other relief authorized by law.

## PARTIES

***Plaintiff Russell Berry***

8. Plaintiff Berry is a citizen and resident of Pennsylvania.

9. Plaintiff Berry is a current customer of Orrstown. As a condition of providing financial services to Plaintiff Berry, Orrstown required him to provide it with his PII, including the PII accessed and stolen by cybercriminals in the Data Breach. Orrstown in turn shared this information with Mercadien in connection with receiving certain advisory services from Mercadien.

10. Plaintiff Berry provided his PII to Orrstown with an understanding that it had reasonable safeguards to protect his PII. Had Plaintiff Berry known of Orrstown's inadequate cybersecurity practices, he would not have engaged in business with Orrstown.

11. At all relevant times, Defendants stored and maintained Plaintiff Berry's PII on their network systems, including the systems impacted in the Data Breach.

12. As a result of the Data Breach, Plaintiff Berry will spend time and effort responding to the Data Breach and mitigating its effect, including monitoring his financial accounts and credit reports for suspicious activity, reviewing account statements, and taking steps to protect himself from identity theft and fraud.

13. As a result of the Data Breach, Plaintiff Berry has experienced spam communications, including calls and text messages.

14. As a direct result of the Data Breach, Plaintiff Berry has suffered injury and damages including, *inter alia*, a substantial and imminent risk of identity theft; the wrongful disclosure and loss of confidentiality of his highly sensitive PII; time and effort lost attempting to mitigate the harm caused by the Data Breach; and deprivation of the value of his PII.

***Defendant Orrstown Bank***

15. Defendant Orrstown Bank is a Pennsylvania domestic financial institution with its principal place of business located at 4750 Lindle Road, Harrisburg, Pennsylvania 17111.

***Defendant Mercadien, P.C., CPAs***

16. Defendant Mercadien, P.C., CPAs is a New Jersey professional services corporation with its principal place of business located at 3625 Quakerbridge Road, Hamilton, New Jersey 08619.

## JURISDICTION AND VENUE

17. The Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332(d)(2), because (a) there are 100 or more Class members, (b) at least one Class member is a citizen of a state that is diverse from Defendants' citizenship, and (c) the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

18. This Court has general personal jurisdiction over Defendant Orrstown Bank because it transacts business within this State and maintains its principal place of business in this District. This Court has personal jurisdiction over Defendant Mercadien, P.C., CPAs because it transacts business within this State.

19. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant Orrstown Bank's principal place of business is in this District and a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

### *Overview of Defendants*

20. Orrstown is a financial institution that provides personal banking, business banking, mortgage lending, retirement, wealth management, and other financial services to consumers and businesses.[1] Mercadien is a certified public accounting and advisory firm that "offers a full spectrum of accounting and advisory services."[2]

21. In the regular course of its business, Orrstown collects and maintains the PII of its current and former customers and clients, including the PII stolen in the Data Breach, before providing them with financial services. Orrstown in turn shares this PII with Mercadien in connection with receiving services from Mercadien.

22. On its website, Orrstown maintains a Privacy Notice (the "Privacy Notice") which describes its practices regarding the PII it collects.[3] In the Privacy Notice, Orrstown states that

---

[1] *Welcome to Orrstown Bank!*, ORRSTOWN BANK, https://www.orrstown.com/about-orrstown (last accessed June 29, 2026).
[2] *Accounting, Tax and Consulting Services*, MERCADIEN, https://www.mercadien.com/accounting-tax-and-consulting-services/ (last accessed June 29, 2026).
[3] *Privacy Notice*, ORRSTOWN BANK (July 2024), https://www.orrstown.com/assets/files/SAlL21bT/Privacy%20Notice%202020-08.pdf.

"Federal law also requires us to tell you how we collect, share and protect your personal information."[4]

23. Orrstown's Privacy Notice lists the reasons Orrstown shares customers' PII, including "[f]or our everyday business purposes," such as "to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus."[5]

24. Orrstown further states in its Privacy Notice that it shares customers' PII "[f]or our marketing purposes," "[f]or joint marketing with other financial companies," and "[f]or our affiliates' everyday business purposes."[6]

25. Orrstown's Privacy Notice represents that, "[t]o protect your personal information from unauthorized access and use," Orrstown uses "security measures that comply with federal law," including "computer safeguards and secured files and buildings."[7]

26. Orrstown also acknowledges that it collects customers' PII directly from customers and from third parties, stating that it collects personal information when customers "open an account," "give [Orrstown] your contact information," "pay [Orrstown] by check," "provide your mortgage information," or "make a wire transfer," and that Orrstown also collects personal information "from others, such as credit bureaus, affiliates, or other companies."[8]

27. Plaintiff and Class members are, or were, customers of Mercadien's clients, and Mercadien stored Plaintiff's and Class members' PII on its network systems.

---

[4] *Id.* at 1.
[5] *Id.*
[6] *Id.*
[7] *Id.* at 2.
[8] *Id.*

### ***The Data Breach***

28. Between approximately September 17, 2025, and October 9, 2025, an unauthorized third party had gained access to Mercadien's network systems and exfiltrated the personal information maintained by Mercadien, including information Mercadien maintained on behalf of its clients. Mercadien did not discover the Data Breach until approximately November 7, 2025.[9]

29. The personal information exfiltrated in connection with the Data Breach includes "names, addresses, dates of birth, driver's license/Government ID numbers, Social Security numbers," "financial account information," "usernames and passwords, IRS pin numbers, and/or payment card information."[10] Orrstown reports that the personal information that "could have been compromised include and potentially were not limited to: name, date of birth, address, social security number or individual tax identification number, account number, or government ID [number]."[11]

30. Despite learning of the Data Breach on or about May 21, 2026, Orrstown waited until approximately June 11, 2026—three weeks later—to announce the Data Breach and begin notifying Plaintiff and Class members that their PII was accessed and acquired by unauthorized persons.[12]

31. Defendants' failure to promptly notify Plaintiff and Class members that their PII was disclosed, accessed, and stolen virtually ensured that the unauthorized third parties who exploited those security lapses could monetize, misuse, or disseminate that PII before Plaintiff and

---

[9] *Notice of Data Security Incident*, MERCADIEN, (archived Mar. 12, 2026), https://web.archive.org/web/20260312131138/https://www.mercadien.com/notice/.
[10] *Id.*
[11] *Notice of Data Security Incident* at 1, ORRSTOWN BANK (June 11, 2026), https://www.orrstown.com/assets/files/NoPJjTiB/Mercadien%20-%20Substitute%20Notice_Website.pdf.
[12] *Id.*

Class members could take affirmative steps to protect their sensitive information. As a result, Plaintiff and Class members will suffer indefinitely from the substantial and concrete risk that their identities will be (or already have been) stolen and misappropriated.

***Defendants Knew that Criminals Target PII***

32. At all relevant times, Defendants knew, or should have known, that the PII that they collect, store, and share was a target for malicious actors. Despite such knowledge, Defendants failed to, or shared PII with third parties that failed to, implement and maintain reasonable and appropriate data privacy and security measures to protect Plaintiff's and Class members' PII from unauthorized disclosures and cyberattacks that they should have anticipated and guarded against.

33. It is well known among companies that store sensitive personally identifying information that such information—such as the PII stolen in the Data Breach—is valuable and frequently targeted by criminals. *Business Insider* noted that "[d]ata breaches are on the rise for all kinds of businesses, including retailers . . . . Many of them were caused by flaws in . . . systems either online or in stores."[13]

34. PII is a valuable property right.[14] The value of PII as a commodity is measurable.[15] "Firms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory

[13] Dennis Green, Mary Hanbury & Aine Cain, *If you bought anything from these 19 companies recently, your data may have been stolen*, BUS. INSIDER (Nov. 19, 2019), https://www.businessinsider.com/data-breaches-retailers-consumer-companies-2019-1.

[14] *See* Marc van Lieshout, *The Value of Personal Data* at 4, 457 Int'l Fed'n for Info. Processing 26 (May 2015) ("The value of [personal] information is well understood by marketers who try to collect as much data about personal conducts and preferences as possible . . ."), https://www.researchgate.net/publication/283668023_The_Value_of_Personal_Data.

[15] *See* Robert Lowes, *Stolen EHR [Electronic Health Record] Charts Sell for $50 Each on Black Market*, MEDSCAPE (Apr. 28, 2014), http://www.medscape.com/viewarticle/824192.

frameworks."[16] American companies are estimated to have spent over $19 billion on acquiring personal data of consumers in 2018.[17] It is so valuable to identity thieves that once PII has been disclosed, criminals often trade it on the "cyber black-market," or the "dark web," for many years.

35. Criminals piece together bits and pieces of compromised PII for profit by creating "Fullz" packages. "Fullz" is fraudster speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, Social Security number, date of birth, and more.

36. With "Fullz" packages, cyber-criminals can cross-reference two or more sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals.

37. The development of "Fullz" packages means here that the stolen PII from the Data Breach can easily be used to link and identify it to Plaintiff's and Class members' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII that was exfiltrated in the Data Breach, criminals may still easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals who intend to misuse it (such as illegal and scam telemarketers) over and over.

38. As a result of the real and significant value of these data, identity thieves and other cyber criminals have openly posted credit card numbers, Social Security numbers, PII, and other

---

[16] Organization for Economic Co-operation and Development at 4, *Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD iLIBRARY (Apr. 2, 2013), https://www.oecd-ilibrary.org/science-and-technology/exploring-the-economics-of-personal-data_5k486qtxldmq-en.

[17] IAB Data Center of Excellence, *U.S. Firms to Spend Nearly $19.2 Billion on Third-Party Audience Data and Data-Use Solutions in 2018, Up 17.5% from 2017*, INTERACTIVE ADVERT. BUREAU (Dec. 5, 2018), https://www.iab.com/news/2018-state-of-data-report/.

sensitive information directly on various internet websites making the information publicly available. This information from various breaches, including the information exposed in the Data Breach, can be readily aggregated with other such data and become more valuable to thieves and more damaging to victims.

39. Consumers place a high value on the privacy of their data, as they should. Researchers shed light on how much consumers value their data privacy—and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[18]

40. Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' PII has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

***Theft of PII Has Grave and Lasting Consequences for Victims***

41. Theft of PII can have serious consequences for the victim. The FTC warns consumers that identity thieves use PII to receive medical treatment, start new utility accounts, and incur charges and credit in a person's name.[19] [20]

[18] Janice Y. Tsai et al., *The Effect of Online Privacy Information on Purchasing Behavior*, *An Experimental Study*, 22(2) INFO. SYS. RSCH. 254 (June 2011) https://www.jstor.org/stable/23015560?seq=1.

[19] *See* Federal Trade Commission ("FTC"), *What to Know About Identity Theft*, FTC CONSUMER INFO., https://www.consumer.ftc.gov/articles/what-know-about-identity-theft (last accessed June 29, 2026).

[20] The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 12 C.F.R. § 1022.3(h). The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." 12 C.F.R. § 1022.3(g).

42. Experian, one of the largest credit reporting companies in the world, warns consumers that "[i]dentity thieves can profit off your personal information" by, among other things, selling the information, taking over accounts, using accounts without permission, applying for new accounts, obtaining medical procedures, filing a tax return, and applying for government benefits.[21]

43. Identity theft is not an easy problem to solve. In a 2025 survey, the Identity Theft Resource Center found that 20% of victims of identity misuse needed more than 30 days to resolve issues stemming from identity theft and 13% required three months or more.[22]

44. There may also be time lags between when sensitive personal information is stolen, when it is used, and when a person discovers it has been used. On average it takes approximately three months for consumers to discover their identity has been stolen and used, but it takes some individuals up to three years to learn that information.[23]

45. It is within this context that Plaintiff and all other Class members must now live with the knowledge that their PII is forever in cyberspace and was taken by someone intending to use that information for any number of improper purposes and scams, including making the information available for sale on the black-market.

---

[21] *See* Louis DeNicola, *What Can Identity Thieves Do with Your Personal Information and How Can You Protect Yourself?*, EXPERIAN (Apr. 8, 2025), https://www.experian.com/blogs/ask-experian/what-can-identity-thieves-do-with-your-personal-information-and-how-can-you-protect-yourself/.

[22] Identity Theft Resource Center, *2025 Consumer Impact Report*, IDENTITY THEFT RES. CTR. (Oct. 2025), https://www.idtheftcenter.org/publication/itrc-2025-consumer-impact-report/.

[23] John W. Coffey, *Difficulties in Determining Data Breach Impacts*, 17 J. OF SYSTEMICS, CYBERNETICS AND INFORMATICS 9 (2019), http://www.iiisci.org/journal/pdv/sci/pdfs/IP069LL19.pdf.

### *Damages Sustained by Plaintiff and Class Members*

46. Plaintiff and Class members have suffered and will suffer injury, including, but not limited to: (i) a substantially increased and imminent risk of identity theft; (ii) the disclosure, compromise, and theft of their PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII; (iv) lost time and opportunity costs associated with efforts to mitigate the actual and future consequences of the Data Breach; (v) the continued risk to their PII which remains in Defendants' possession; (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII compromised as a result of the Data Breach; and (vii) overpayment for the services that were received without adequate data security.

## CLASS ACTION ALLEGATIONS

47. This action is brought and may be properly maintained as a class action pursuant to Federal Rule of Civil Procedure 23.

48. Plaintiff brings this action on behalf of himself and all members of the following Class of similarly situated persons:

> All persons whose PII was accessed in the Data Breach by unauthorized persons, including all who were sent a notice of the Data Breach.

49. Plaintiff also brings this action on behalf of himself and all members of the following Subclasses of similarly situated persons:

> **Orrstown Subclass**
> All persons who provided their PII to Orrstown and whose PII was accessed in the Data Breach by unauthorized persons, including all who were sent a notice of the Data Breach.
>
> **Pennsylvania Subclass**
> All residents of Pennsylvania whose PII was accessed in the Data Breach by unauthorized persons, including all who were sent a notice of the Data Breach.

50. Excluded from the Class are Orrstown Bank, and its affiliates, parents, subsidiaries, employees, officers, agents, board members, and directors; Mercadien, P.C., CPAs, and its affiliates, parents, subsidiaries, employees, officers, agents, board members, and directors; as well as the judge(s) presiding over this matter and the clerks of said judge.

51. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

52. The members in the Class are so numerous that joinder of each of the Class members in a single proceeding would be impracticable. Mercadien reported to the Indiana Attorney General that the Data Breach affected approximately 402,741 individuals.[24] Orrstown reported to the Maine Attorney General that the Data Breach affected approximately 83,938 of their customers.

53. Common questions of law and fact exist as to all Class members and predominate over any potential questions affecting only individual Class members. Such common questions of law or fact include, *inter alia*:

a. whether Defendants had a duty to implement and maintain reasonable security procedures and practices to protect and secure Plaintiff's and Class members' PII from unauthorized access and disclosure;

b. whether Defendants had duties not to disclose the PII of Plaintiff and Class members to unauthorized third parties;

c. whether Defendants failed to exercise reasonable care to secure and safeguard Plaintiff's and Class members' PII;

d. whether Defendants breached their duties to protect Plaintiff's and Class members' PII; and

[24] *Data Breach Notifications* at 11, Indiana Attorney General (June 2026), https://www.in.gov/attorneygeneral/consumer-protection-division/id-theft-prevention/files/DB-June2026.pdf.

e. whether Plaintiff and Class members are entitled to damages and the measure of such damages and relief.

54. Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of himself and all other Class members. Individual questions, if any, pale in comparison, in both quantity and quality, to the numerous common questions that dominate this action.

55. Plaintiff's claims are typical of the claims of the Class. Plaintiff, like all proposed members of the Class, had his PII compromised in the Data Breach. Plaintiff and Class members were injured by the same wrongful acts, practices, and omissions committed by Defendants, as described herein. Plaintiff's claims therefore arise from the same practices or course of conduct that give rise to the claims of all Class members.

56. Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff is an adequate representative of the Class in that he has no interests adverse to, or that conflict with, the Class he seeks to represent. Plaintiff has retained counsel with substantial experience and success in the prosecution of complex consumer protection class actions of this nature.

57. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other financial detriment suffered by Plaintiff and Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for Class members to individually seek redress from Defendants' wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a

potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE

58. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

59. Defendants owed a duty to Plaintiff and Class members to exercise reasonable care in safeguarding and protecting the PII in their possession, custody, or control. This duty arose upon Defendants' acceptance and retention of the PII of Plaintiff and Class members as part of their business operations.

60. Among the specific duties Defendants owed Plaintiff and Class members were duties to:

a. exercise reasonable care in collecting, retaining, securing, protecting, and disposing of PII in their possession;

b. protect PII using security procedures and systems compliant with applicable legal requirements and industry-standard practices;

c. implement and maintain monitoring systems sufficient to timely detect unauthorized access to their network and data; and

d. promptly notify Plaintiff and Class members upon discovering that their PII had been compromised.

61. Defendants knew that the PII in their possession was highly sensitive and that inadequate security practices would subject Plaintiff and Class members—who had no alternative but to trust Defendants with their data—to foreseeable and substantial risk of harm.

62. Defendants knew or should have known the risks of collecting and storing Plaintiff's and all other Class members' PII and the importance of maintaining secure systems. Defendants knew or should have known of the many data breaches that targeted companies that collect and store PII in recent years.

63. Only Defendants were in a position to ensure that their systems were sufficient to protect the PII that Plaintiff and Class members had entrusted to their care. This asymmetry of control establishes a special relationship between Defendants and Class members that independently supports the imposition of a duty of care.

64. Defendants also had independent duties under state and federal laws requiring Defendants to reasonably safeguard the PII of Plaintiff and Class members and to promptly notify them of any data breach. These duties are untethered to any contract between the parties.

65. Given the nature of Defendants' business, the sensitivity and value of the PII they maintain, and the resources at their disposal, Defendants should have identified the vulnerabilities in their systems or their third-party vendors' inadequate data security and prevented the Data Breach from occurring or should not have provided PII to third-party vendors with inadequate data security.

66. Defendants breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members' PII by failing to, or failing to ensure that their third-party vendors, design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and

software and hardware systems to safeguard and protect PII entrusted to it—including Plaintiff's and Class members' PII.

67. It was reasonably foreseeable to Defendants that their failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members' PII by failing to, or failing to ensure that their third-party vendors, design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems would result in the unauthorized release, disclosure, and dissemination of Plaintiff's and Class members' PII to unauthorized individuals.

68. But for Defendants' negligent conduct or breach of the above-described duties owed to Plaintiff and Class members, their PII would not have been compromised.

69. As a result of Defendants' above-described wrongful actions, inaction, and want of ordinary care that directly and proximately caused the Data Breach, Plaintiff and Class members have suffered and will continue to suffer injury, including, but not limited to: (i) a substantial increase in the likelihood of identity theft; (ii) the compromise, publication, and theft of their PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII; (iv) lost opportunity costs associated with efforts attempting to mitigate the actual and future consequences of the Data Breach; (v) the continued risk to their PII which remains in Defendants' possession; (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII compromised as a result of the Data Breach; and (vii) overpayment for the services that were received without adequate data security.

## COUNT II
## NEGLIGENCE PER SE

70. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

71. Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the failure by businesses to employ reasonable measures to protect consumers' sensitive personal data. *See FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

72. Pursuant to the FTC Act and the FTC's published guidance and enforcement precedent, Defendants had a duty to implement and maintain reasonable data security measures to protect the PII of Plaintiff and Class members. Defendants violated this duty as described herein.

73. The harm suffered by Plaintiff and Class members, including the exposure and potential misuse of their PII, resulting in a substantial risk of identity theft, financial fraud, and tax fraud, is precisely the type of harm that Section 5 of the FTC Act is designed to prevent.

74. Defendants' violation of Section 5 of the FTC Act constitutes negligence per se.

75. But for Defendants' negligent breach of their statutory duties, Plaintiff and Class members would not have suffered the injuries described herein.

76. The injuries suffered by Plaintiff and Class members were the reasonably foreseeable result of the Defendants' breach. Defendants knew or should have known that their failure to maintain adequate security would expose Plaintiff and Class members to precisely these harms.

77. As a direct and proximate result of Defendants' negligence per se, Plaintiff and Class members have suffered actual, tangible injury-in-fact and damages, including: the exposure and potential exploitation of their PII; increased risk of identity theft and financial fraud; lost time

and productivity; emotional distress; potential delay in receipt of tax refunds; and diminution in value of their PII.

78. As a result of Defendants' negligence per se, Plaintiff and Class members are entitled to recover actual, compensatory, and punitive damages.

**COUNT III**
**BREACH OF IMPLIED CONTRACT**
***Individually and on Behalf of the Orrstown Subclass Against Orrstown Only***

79. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

80. Plaintiff brings this claim individually and on behalf of all other Orrstown Subclass members against Orrstown only.

81. In connection with receiving financial services, Plaintiff and all other Orrstown Subclass members entered into implied contracts with Orrstown.

82. Pursuant to these implied contracts, Plaintiff and Orrstown Subclass members paid money to Orrstown and provided Orrstown with their PII. In exchange, Orrstown agreed to, among other things, and Plaintiff and Orrstown Subclass members understood that Orrstown would: (1) provide financial services to Plaintiff and Orrstown Subclass members; (2) collect, maintain, and utilize Plaintiff's and Orrstown Subclass members' PII to, among other things, provide financial services to Plaintiff and Orrstown Subclass members; (3) take reasonable measures to protect the security and confidentiality of Plaintiff's and Orrstown Subclass members' PII; (4) protect Plaintiff's and Orrstown Subclass members' PII in compliance with federal and state laws and regulations, industry standards, and Orrstown's representations; and (5) maintain the confidentiality of Plaintiff's and Orrstown Subclass members' PII and protect it from unauthorized access, disclosure, theft, and misuse.

83. The protection of PII was a material term of the implied contracts between Plaintiff and Orrstown Subclass members, on the one hand, and Orrstown, on the other hand. Indeed, as set forth *supra*, Orrstown recognized the importance of data security and the privacy of its customers' and clients' PII in its Privacy Notice. Had Plaintiff and Orrstown Subclass members known that Orrstown would not adequately protect its customers' and clients' PII, they would not have agreed to provide Orrstown with their PII or receive financial services from Orrstown.

84. Plaintiff and Orrstown Subclass members performed their obligations under the implied contract when they provided Orrstown with their PII and paid for financial services from Orrstown.

85. Orrstown breached its obligations under its implied contracts with Plaintiff and Orrstown Subclass members in failing to implement and maintain reasonable security measures to protect and secure their PII and in failing to implement and maintain reasonable security protocols and procedures to protect Plaintiff's and Orrstown Subclass members' PII in a manner that complies with applicable laws, regulations, industry standards, and Orrstown's representations.

86. Orrstown's breach of its obligations of its implied contracts with Plaintiff and Orrstown Subclass members directly resulted in the Data Breach and the injuries that Plaintiff and all other Orrstown Subclass members have suffered from the Data Breach.

87. Plaintiff and all other Orrstown Subclass members were damaged by Orrstown's breach of implied contracts because: (i) they paid for data security protection they did not receive; (ii) they face a substantially increased risk of identity theft justifying expenditures for protective and remedial services for which they are entitled to compensation; (iii) their PII was improperly disclosed to unauthorized individuals; (iv) the confidentiality of their PII has been breached; (v) they were deprived of the value of their PII, for which there is a well-established national and

international market; (vi) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of identity theft they face and will continue to face; and (vii) overpayment for services that were received without adequate data security.

## COUNT IV
## UNJUST ENRICHMENT

88. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

89. This claim is pleaded in the alternative to the breach of implied contract claim.

90. Plaintiff and Class members conferred a monetary benefit upon Defendants in the form of monies paid for financial services (directly or indirectly) and through the provision of their PII.

91. Defendants accepted or had knowledge of the benefits conferred upon them by Plaintiff and Class members. Defendants also benefitted from the receipt of Plaintiff's and Class members' PII, as this was used to provide financial services.

92. As a result of Defendants' conduct, Plaintiff and Class members suffered actual damages in an amount equal to the difference in value between their payments made with reasonable data privacy and security practices and procedures that Plaintiff and Class members paid for, and those payments without reasonable data privacy and security practices and procedures that they received.

93. Defendants should not be permitted to retain the money belonging to Plaintiff and Class members because Defendants failed to adequately implement the data privacy and security procedures that Plaintiff and Class members paid for and that were otherwise mandated by federal, state, and local laws and industry standards.

94. Plaintiff and Class members have no adequate remedy at law.

95. Defendants should be compelled to provide for the benefit of Plaintiff and Class members all unlawful proceeds received by them as a result of the conduct and Data Breach alleged herein.

## COUNT V
## VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW
## 73 PA. CONST. STAT.§§ 201-1–201-9.3
***Individually and on Behalf of the Pennsylvania Subclass***

96. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

97. Plaintiff brings this claim individually and on behalf of all other Pennsylvania Subclass members against Defendants.

98. Defendants offered and continue to offer services in the Commonwealth of Pennsylvania.

99. Plaintiff, Pennsylvania Subclass members, and Defendants are "persons" as defined by the UTPCPL. 73 Pa. Const. Stat. § 201-2(2).

100. Defendants obtained Plaintiff's and Pennsylvania Subclass members' PII in connection with the services Defendants performed.

101. Defendants engaged in unfair or deceptive acts in violation of the UTPCPL by failing to implement and maintain reasonable security measures to protect and secure Plaintiff's and Pennsylvania Subclass members' PII in a manner that complied with applicable laws, regulations, and industry standards.

102. Orrstown also makes explicit statements to its customers that their PII will remain private as evidenced by Orrstown's Privacy Notice.

103. The UTPCPL lists twenty-one instances of "unfair methods of competition" and "unfair or deceptive acts or practices." 73 Pa. Const. Stat. § 201-2(4). Defendants' failure to adequately protect Plaintiff and Pennsylvania Subclass members' PII while holding out that it would adequately protect the PII falls under at least the following categories:

a. Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have (73 Pa. Const. Stat. § 201-2(4)(v));

b. Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another (73 Pa. Const. Stat.. § 201-2(4)(vii));

c. Advertising goods or services with intent not to sell them as advertised (73 Pa. Const. Stat. § 201-2(4)(ix)); and

d. Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding (73 Pa. Const. Stat. § 201-2(4)(xxi)).

104. Due to the Data Breach, Plaintiff and Pennsylvania Subclass members have lost property in the form of their PII. Further, Defendants' failure to adopt reasonable practices in protecting and safeguarding their customers' PII will force Plaintiff and Pennsylvania Subclass members to spend time or money to protect against identity theft. Plaintiff and Pennsylvania Subclass members are now at a higher risk of identity theft and other crimes. This harm sufficiently outweighs any justifications or motives for Defendants' practice of collecting and storing PII without appropriate and reasonable safeguards to protect such information.

105. As a result of Defendants' violations of the UTPCPL, Plaintiff and Pennsylvania Subclass members have suffered and will suffer injury, including, but not limited to: (i) a substantial increase in the likelihood of, or imminent threat of, identity theft; (ii) the compromise, publication, and theft of their PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII; (iv) lost opportunity costs associated with effort attempting to mitigate the actual and future consequences of the Data Breach; (v) the continued risk to their PII which remains in Defendants' possession; (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII compromised as a result of the Data Breach; and (vii) overpayment for the services that were received without adequate data security.

106. Pursuant to 73 Pa. Const. Stat. § 201-9.2(a), Plaintiff seeks actual damages, $100, or three times their actual damages, whichever is greatest. Plaintiff also seeks costs, expenses, and reasonable attorney fees.

## PRAYER FOR RELIEF

Plaintiff, individually and on behalf of all other members of the Class, respectfully requests that the Court enter judgment in his favor and against Defendants as follows:

A. Certifying the Class as requested herein, designating Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel;

B. Awarding Plaintiff and the Class appropriate monetary relief, including actual damages, statutory damages, punitive damages, restitution, and disgorgement;

C. Awarding Plaintiff and the Class equitable, injunctive, and declaratory relief, as may be appropriate. Plaintiff, on behalf of himself and the Class, seeks appropriate injunctive relief designed to prevent Defendants from experiencing another data breach by adopting and

implementing best data security practices to safeguard PII and to provide or extend credit monitoring services and similar services to protect against all types of identity theft and medical identity theft;

D. Awarding Plaintiff and the Class pre-judgment and post-judgment interest to the maximum extent allowable;

E. Awarding Plaintiff and the Class reasonable attorneys' fees, costs, and expenses, as allowable; and

F. Awarding Plaintiff and the Class such other favorable relief as allowable under law.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

Dated: June 29, 2026

Respectfully submitted,

*/s/ Tyler S. Graden*
Tyler S. Graden (PA 205844)
**KESSLER TOPAZ MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056
tgraden@ktmc.com

Jason H. Alperstein*
**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Tel: (973) 994-1700
Fax: (973) 994-1744
jalperstein@carellabyrne.com

Ben Barnow*
Anthony L. Parkhill*
**BARNOW AND ASSOCIATES, P.C.**

205 West Randolph Street, Suite 1630
Chicago, IL 60606
Tel: 312.621.2000
Fax: 312.641.5504
b.barnow@barnowlaw.com
aparkhill@barnowlaw.com

Scott Edward Cole, Esq.*
**COLE & VAN NOTE**
555 12th Street, Suite 2100
Oakland, California 94607
Tel: (510) 891-9800
Fax: (510) 891-7030
sec@colevannote.com

*Counsel for Plaintiff and the proposed Class*

**Pro hac vice* forthcoming